# Ambrosia Coal & Construction Co. v. People's Bank of Western Pennsylvania

C.P. of Lawrence County, no. 10707 of 1994.

*Frank G. Salpietro,* for plaintiffs.
*Gary P. Hunt,* for defendants.

PRATT, *P.J.,* April 5, 2002—Plaintiffs in this case, Ambrosia Coal and Construction Company, Penn Ohio Road Materials Inc., C.D. Ambrosia Trucking Company, and New Castle Lime and Stone Inc., filed a complaint on July 31, 1996, against defendants, People's Bank of Western Pennsylvania and Robert Koslow, in which plaintiffs set forth a number of causes of action in 10 counts of their complaint, including breach of fiduciary duty, breach of contract, bad faith, conversion, violation of the Uniform Commercial Code, negligence, intentional interference with contractual relationships, and fraudulent misrepresentation.

Plaintiffs' causes of action stem from the relationship between plaintiffs, as depositors and borrowers, and defendants, as lender and depositor bank. Plaintiffs pledged nearly six million dollars in collateral in the form of certificates of deposit (C.D.s) to defendant People's Bank in return for loans granted to plaintiffs by the bank. In September 1992, defendants liquidated the C.D.s pledged by plaintiffs as collateral for the loans. In their complaint, plaintiffs allege that, by defendants liquidating plaintiffs' C.D.s:

(1) Plaintiffs suffered the loss of business profits because they did not have sufficient liquid collateral to support the security bonds required in order to obtain construction contracts;

(2) The net worth of plaintiffs' business diminished; and

(3) The liquidation reflected negatively on plaintiffs' credit and, as a result, plaintiffs were unable to obtain a line of credit.

Plaintiffs seek compensatory as well as punitive damages in their lawsuit.

The crux of plaintiffs' case is that defendants improperly liquidated plaintiffs' C.D.s in the sum of $6 million, which served as collateral, in whole or in part, to pay off the construction loans for which plaintiffs were obligated to defendants. Plaintiffs allege that defendants' purpose in liquidating the C.D.s was not to repay the loans because plaintiffs were a credit risk with a history of defaulting on the loan repayments but, rather, was for the sole purpose of improving defendant People's Bank's financial portfolio and balance sheet for the proposed merger between Bank & Trust Financial Corporation (B&T), located in Johnstown, Pennsylvania, and defendant People's Bank, and that this was contrary to the duties and responsibilities of the defendants and the best interests of the plaintiffs.

Plaintiffs have now filed a third motion for sanctions regarding defendants' failure to comply with a discovery request for production of documents. Plaintiffs are requesting this court to impose sanctions against defendants by entering a judgment against them for their non-

compliance with the discovery requests. Plaintiffs contend that defendants willfully and recklessly withheld information and evidence from plaintiffs relevant to the instant case by not providing requested documents, particularly the minutes of the meetings of the board of directors of defendant People's Bank, and that defendants did so to hinder or impede plaintiffs' case. Plaintiffs assert that the requested minutes of the board of directors' meetings show that B&T was in the process of buying out defendant People's Bank and that this merger was a motivating factor in defendants liquidating plaintiffs' C.D.s in September 1992, so that defendant People's Bank would be able to show stronger financial stability. Discussions and negotiations regarding the possible merger were taking place in 1992, prior to the liquidation of plaintiffs' C.D.s.

In October 1996, plaintiffs served defendants with a request for the production of documents, requesting copies of all documents relating to their causes of action. In December 1996, defendants responded by providing plaintiffs with certain requested documents, except for the minutes of the board of directors' meetings possessed by defendant People's Bank. Minutes were not produced until August 1997, eight months after defendants' first release of documents. The minutes consisted of only six sets of *redacted* board minutes for the years 1991 and 1992 and were selected by defendants. Certain board minutes were excluded by defendants based on the assertion of the attorney-client privilege.

By way of further discovery, the handwritten shorthand notes of Linda Sklenchar, the former corporate secretary and personal secretary of defendant Robert

Koslow, CEO and president of defendant People's Bank, were requested by the plaintiffs in May 2001. Defendants responded by stating that the notes no longer existed and were not available. However, the handwritten notes were eventually produced in October 2001, after the court ordered their production by its October 15, 2001, order. Plaintiffs argue that defendant Robert Koslow, as CEO and president of defendant People's Bank, knew or should have known of the existence and whereabouts of the handwritten notes and that they should have been provided to plaintiffs upon their request in May 2001.

In October 2001, when plaintiffs received the shorthand notes, they became aware that board minutes existed, which defendants failed to produce, containing information relevant to the instant litigation, including the proposed bank merger.

Thereafter, plaintiffs requested that defendants produce a full set of *unredacted* board minutes. In November 2001, defendants then produced *unredacted* minutes from board meetings for the years 1985, 1986, 1991, 1992, 1993, and 1994. Plaintiffs assert, however, that the board minutes relative to the proposed merger were not included.

Plaintiffs charge that, of the 30 sets of board minutes which plaintiffs have identified as being relevant to the instant litigation, defendants have failed to produce 16 1/2 sets of minutes (a portion of board minutes from September 16, 1992, were produced in redacted form but did not include references to the bank merger), all of which contain information pertaining to the merger and are relevant to the instant litigation. According to plain-

tiffs, as of November 2001, defendants have only produced six sets of *unredacted* board minutes from 1985, 1986, 1991, 1992, 1993, and 1994.

Defendants counter that they did not withhold documents, they fully complied with all discovery requests made by plaintiffs, and all documents relevant to the instant litigation were produced. Furthermore, defendants claim that plaintiffs' counsel, Frank G. Salpietro, Esquire, visited defendant People's Bank in New Castle, in the early fall of 1996, to review documents, including board minutes, relating to the relationship between the parties and plaintiffs' causes of action and, in doing so, Attorney Salpietro identified and marked the documents that were to be copied and produced.

At the hearing conducted of the instant motion, the parties presented evidence and legal arguments in support of their respective positions.

## DISCUSSION

The trial court may issue sanctions against a party that fails to comply with a discovery request as prescribed by Pa.R.C.P. 4019(a) and (b). Normally, sanctions are not imposed absent "willful disregard . . . of a court order or an obligation expressly stated in the rules." *Gonzales v. Procaccio Bros. Trucking Co.,* 268 Pa. Super. 245, 251, 407 A.2d 1338, 1341 (1979). Whether to issue sanctions to a disobedient party lies within the sound discretion of the trial court and the court must choose a punishment which "fits the crime." *Brunetti v. SEPTA,* 329 Pa. Super. 477, 481-82, 478 A.2d 889, 891 (1994). Although the severity of the sanctions is vested within

the sound discretion of the trial court, the sanction must be appropriate for the violation. *Pride Contracting v. Biehn Construction,* 381 Pa. Super. 155, 159, 553 A.2d 82, 83 (1989). For example, the Superior Court in *Gonzales, supra* at 252, 407 A.2d at 1341, held:

"If a written interrogatory asks for information which, although relevant, is not determinative of the entire controversy, a default judgment, which in effect is an adjudication of the merits, would seldom, if ever, be appropriate. Under such circumstances, it would be more appropriate to treat the default as an admission or to disallow proof at trial of such undisclosed information."

In addition, when determining the type of sanction to be imposed against a disobedient party, the court must balance the procedural need to move a case to a prompt disposition and the rights of the parties. *Pride Contracting, supra* at 159, 553 A.2d at 84. See for example, *Spilove v. Cross Transportation Inc.,* 223 Pa. Super. 143, 146 n.4, 297 A.2d 155, 157 n.4 (1972) (a default judgment is proper when a party unreasonably fails to answer interrogatories, therefore, preventing the cause of action to move forward).

In entering sanctions against a noncompliant party, the court has the discretion to enter a default judgment against the disobedient party pursuant to Pa.R.C.P. 4019(c)(3), but it should be entered only in rare circumstances. *Luszczynski v. Bradley,* 729 A.2d 83 (Pa. Super. 1999).

In determining an appropriate sanction to be imposed pursuant to Pa.R.C.P. 4019, the Superior Court in *Luszczynski, id.* at 87, identified several factors to be considered, including:

"(1) the nature and severity of the discovery violation;

"(2) the defaulting party's willfulness or bad faith;

"(3) prejudice to the opposing party;

"(4) the ability to cure the prejudice; and

"(5) the importance of the precluded evidence in light of the failure to comply."

Applying these factors in the instant case, in determining whether any sanction shall be imposed against defendants and the nature thereof, the court must review the nature and severity of any discovery violations by defendants. By continually withholding board minutes containing information vital to plaintiffs' causes of action, defendants delayed plaintiffs' causes of action going to trial and deliberately placed evidence beyond plaintiffs' reach by failing to produce the requested handwritten notes of Linda Sklenchar in response to plaintiffs' first request for production of documents in October 1996, as well as plaintiffs' fourth request for production of documents made in May 2001. Furthermore, the delay in producing the handwritten notes delayed the discovery of board minutes relevant to plaintiffs' causes of action and the B&T merger and left plaintiffs without the opportunity to depose two witnesses which may have been crucial to plaintiffs' causes of action. Defendants' actions essentially attempted to stonewall plaintiffs' case.

The court can only conclude that defendants' failure to appropriately respond to plaintiffs' discovery requests delayed the case and prevented plaintiffs from further

discovery information vital to plaintiffs' causes of action. The court finds this discovery infraction to be egregious.

Regarding any willfulness and bad faith by defendants, in October 1996, plaintiffs requested from defendant People's Bank any and all documents relating to plaintiffs' causes of action. At that time defendant People's Bank knew or should have known of the requested board minutes, which mentioned and referred to plaintiffs and/ or the B&T merger. Nevertheless, defendants continually failed to produce the documents to plaintiffs. Plaintiffs served four different requests for production of documents on defendants, but never received the board minutes containing the references to the B&T merger.

Defendants argue that they exhibited no willfulness or bad faith regarding plaintiffs' discovery request. They base this argument on the assertion that representatives and agents of defendant People's Bank permitted Attorney Salpietro to review documents relevant to the instant litigation in defendant People's Bank's board room in New Castle, Pennsylvania, that Attorney Salpietro had all the relevant information at his disposal and he selected and tabbed what documents were to be produced to plaintiffs. Attorney Salpietro testified, denying the allegation and denying ever visiting defendant People's Bank.

Upon reviewing the evidence and testimony presented at the hearing conducted of this matter, the court finds that defendants failed to produce any evidence to support their allegation that Attorney Salpietro visited defendant People's Bank to review any documents. Defen-

dants presented testimony that all the relevant documents, including the board meetings, were displayed at defendant People's Bank's offices in its board room, where Attorney Salpietro was to review them; however, none of the witnesses could testify that they personally observed Attorney Salpietro in the board room reviewing documents or at the bank at any time. Also, defendants' witnesses also testified that there was no documentation showing that a time and place had been scheduled for Attorney Salpietro to review the documents at the bank. Plaintiffs, on the other hand, produced Attorney Salpietro's law office time sheets, which he kept in order to keep track of the time he spent on the case for billing purposes. The records failed to show any reference to his reviewing documents at defendant People's Bank.

Consequently, the court rejects defendants' assertion that they fully complied with plaintiffs' discovery request by permitting Attorney Salpietro a full opportunity to review the documents relating the instant litigation and from which Attorney Salpietro could choose those documents deemed pertinent and relevant to plaintiffs' causes of action.

Further, the court issued sanction orders against defendants on two different occasions, the first on April 16, 2001, sanctioning defendants for violating a confidentiality agreement. The court ordered defendants' counsel, Scott R. Leah and the law firm of Egler, Garrett & Egler to pay $7,500 to plaintiffs for counsel fees for violating the confidentiality agreement. The second order, dated October 15, 2001, required defendants to produce documents used by defendants' experts in preparing a

report, as well as the handwritten notes of Linda Sklenchar or, in the alternative, if the handwritten notes could not be produced, an affidavit stating the reasons they could not be located.

The court concludes that defendants' conduct in continuing to withhold board minutes, which they knew or should have known were available and relevant to the instant litigation, exacerbated by defendants' past behavior which caused two sanction orders to be imposed against them, amounted to willful and bad faith behavior by defendants regarding plaintiffs' discovery requests.

Next, the court must determine whether defendants' failure to fully respond to plaintiffs' discovery requests caused plaintiffs to suffer prejudice and whether any such prejudice is capable of being cured.

By defendant withholding the board minutes in question, plaintiffs forever lost an opportunity to further depose one of the board members, James Dunlevy, regarding the board meetings and the B&T merger. While plaintiffs did depose Dunlevy, at the time of his deposition, plaintiffs did not possess any documents or information relative to the B&T merger and, therefore, Dunlevy was not questioned about the matter. By the time plaintiffs received the discovery information regarding the B&T merger, Dunlevy was deceased.

Also, Nelson Young, an attorney with the law firm of Reed, Smith, Shaw and McClay, located in Pittsburgh, Pennsylvania, was involved with the B&T merger. Attorney Young was present at the board of directors' meetings of defendant People's Bank, where he advised the directors concerning the B&T merger. Mr. Nelson was

also present in New York for meetings concerning the B&T merger, during which plaintiff Ambrosia Coal and Construction Company was discussed. Attorney Nelson, however, was also deceased prior to defendants producing and providing a full set of unredacted minutes to plaintiffs and, therefore, plaintiffs have been forever foreclosed from deposing Attorney Nelson regarding the merger.

Although no specific date was provided to the court as to when Dunlevy and Nelson expired, the parties agree that they died prior to October 2001, when plaintiffs received the handwritten shorthand notes containing information about the B&T merger. Hence, the court finds that the withholding of information contained in the board minutes prejudiced the plaintiffs by hindering their discovery and causing plaintiffs to lose the opportunity to depose two key witnesses regarding the B&T merger. The court further finds that such prejudice cannot be cured because the two witnesses are now deceased.

Lastly, the court must determine the importance of the precluded evidence. The evidence and information which was withheld, regarding the B&T merger and other issues involved in plaintiffs' case, is crucial to plaintiffs, in that it attempts to show a motivating factor for defendants' conduct in liquidating plaintiffs' C.D.s. Two witnesses with firsthand knowledge of the B&T merger passed away prior to plaintiffs becoming aware of the importance of the merger in connection with the liquidation of plaintiffs' C.D.s and having an opportunity to depose the witnesses. Moreover, plaintiffs' case would not have been delayed had the board minutes been produced when requested and plaintiffs would have had the

opportunity to fully develop their causes of action, particularly by deposing James Dunlevy and Nelson Young, crucial witnesses to the B&T merger. By precluding this evidence, defendants obstructed the development of plaintiffs' case, thereby preventing it from moving forward.

Based on the court's analysis of the factors, which should be considered in determining whether to impose sanctions and the severity thereof for discovery request violations by a party, the court finds that plaintiffs' third motion for sanctions shall be granted and that the sanction of entry of default judgment against the defendants is appropriate in this case. Accordingly, the court shall issue a separate order implementing the court's conclusions.

## ORDER

In accordance with the accompanying opinion, plaintiffs' third motion for sanctions is granted and, as a sanction to be imposed upon defendants for failing to comply with plaintiffs' discovery requests, default judgment is entered against the defendants and in favor of plaintiffs.

The remaining issue of damages shall proceed to trial.

The prothonotary shall properly service notice of this order and attached opinion upon counsel of record.